USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/2/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                                                               :   23-MC-048 (VEC)
IN RE APPLICATION OF                                           :
Damien James Byrne                                             :   OPINION AND ORDER
                                                               :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Petitioner Damien James Byrne ("Petitioner") applied pursuant to 28 U.S.C. § 1782 for discovery from various financial institutions ("Respondents"),[1] Pet., Dkt. 4; the Court granted the application on February 27, 2023, Order, Dkt. 7. Mehboob Hamza Dawoodbhoy ("Intervenor") moved to intervene in this case, to vacate the Court's February 27, 2023 Order, to quash the subpoenas, and to stay discovery. Mot., Dkt. 10; Mem., Dkt. 11. Alternatively, Intervenor seeks a copy of all of discovery produced by Respondents. *See id.*[2]

For the reasons stated below, the motion to intervene is GRANTED. Intervenor's motion to vacate the Court's February 27, 2023, Order granting Petitioner's § 1782 Application, to quash the subpoenas, and to stay discovery is DENIED. Intervenor's request to inspect the documents produced to Petitioner in this action is also DENIED.

## BACKGROUND

Petitioner is an Irish national who has resided in the United Arab Emirates for over 20 years. Pet. at 1. In 2008, Petitioner was approached by Seven Seas Computers LLC ("SSC") and Mustansir Hamza Khetty Dawoodbhoy (an individual who has not moved to intervene in this case; hereinafter, "Mustansir") in connection with a real estate development project. *See id.*

---

[1] Petitioner seeks discovery from Citibank, N.A.; The Bank of New York Mellon; Société Générale, New York Branch; HSBC Bank USA, N.A.; BNP Paribas USA; JPMorgan Chase Bank, N.A.; Barclays Bank PLC; Deutsche Bank Trust Co. Americas; The Bank of Nova Scotia, New York Agency; UBS AG; Bank of America, N.A., US; Standard Chartered Bank Commerzbank AG, New York Branch; and The Clearing House Payments Company LLC. Pet. at 1 n.1.

[2] The Respondents have not moved against the subpoenas.

Petitioner and his father provided SSC roughly $7.1 million USD in exchange for ownership of a multi-story residential dwelling that was to be built in Abu Dhabi. *Id.* at 1–2. According to Petitioner, rather than invest the funds, Mustansir, Omar Hassan Ali Alattar, and Intervenor (together, the "Liable Parties"), who are "current/previous shareholders and/or managers" of SSC, "used the funds for personal and unintended uses." *Id.* at 2.

On October 27, 2021, the Dubai Court of Appeal found that the Liable Parties were personally liable for fraud and entered a judgment against them for approximately $9.5 million. *See* Al Dhaheri *ex parte* Decl. ¶ 10, Dkt. 2.[3] The judgment was affirmed by the Court of Cassation and "was immediately brought before the Execution Court" for enforcement (the "Pending Proceeding"); after multiple enforcement attempts, on April 14, 2022, the Execution Court "ordered the arrest of the Liable Parties (until payment is made in full)." *Id.*[4] Although orders of attachment have been issued against the UAE bank accounts of the Liable Parties in which "they own/have a shareholding interest," according to Petitioner, some of the misappropriated funds were transferred through New York entities; thus, "[d]iscovery through

---

[3] Petitioner first commenced a civil case against SSC and Mustansir, resulting in a judgment against SSC for approximately $7.6 million plus interest. Pet. at 2.; Al Dhaheri *ex parte* Decl. ¶¶ 4, 6. To enforce the judgment, the court appointed a forensic accounting firm, KPMG, to investigate the allegations and to analyze SSC's financial records. Al Dhaheri *ex parte* Decl. ¶¶ 6–11; *see also* Al Dhaheri Opp. Decl. ¶¶ 11–12, Dkt. 12. The firm reviewed the bank accounts of SSC and SSC's managing members, including Intervenor, and concluded, based, in part, on banking transactions that were processed by financial institutions within this district, that the Liable Parties had been diverting assets to avoid payment of the judgment. Al Dhaheri *ex parte* Decl. ¶¶ 9, 14–15. As a result of the firm's findings, Petitioner brought new proceedings for fraud in the Dubai Court of Appeal, which issued an additional judgment against the Liable Parties, jointly and severally, for approximately $9.5 million plus interest. *See* Pet. at 2–3; Al Dhaheri Opp. Decl. Ex. A, Dkt. 12-1.

[4] The UAE is a federation of seven emirates, or states: Abu Dhabi, Sharjah, Umm Al Quwain, Ajman, Fujairah, and Ras Al Khaimah. *See* Al Dhaheri Opp. Decl. ¶ 8. "Each emirate is a separate legal jurisdiction." *Id.* Abu Dhabi, Dubai, and Ras Al Khaimah each have separate judicial systems "comprising a Court of First Instance, a Court of Appeal and a Court of Cassation, which is the final court of appeal for that Emirate." *Id.* ¶ 9. By contrast, the remaining emirates, including Sharjah, fall "under the federal system administered by the Ministry of Justice with the Union Supreme Court being the ultimate Court. There is no appeal from the Dubai Court of Cassation to the Federal Courts." *Id.* Execution proceedings before the Dubai Courts are "separate proceedings" to enforce a judgment; "a different judge [than the judge who issued the judgment] hears the matter and it is possible for each side to file submissions and objections before the Court concerning any particular decision made by the Execution Judge." Pet. at 3.

the Southern District of New York is crucial in order to trace the whereabouts of the [Petitioner's] missing money." *Id.* ¶¶ 10–11.

The second foreign proceeding for which Petitioner seeks discovery is a "Contemplated Criminal Proceeding," which Petitioner intends to file in the Emirate of Sharjah pursuant to Article 269 of the UAE Federal Penal Code and Article 364 of the UAE Commercial Companies Law. *See id.* ¶ 13.[5] Petitioner intends to file the criminal complaint "once he has sufficient evidence to persuade the Public Prosecutor that a prosecution will be successful." *Id.* The Contemplated Criminal Proceeding springs from the same well as the events underlying the Pending Proceeding. *See* Opp. at 10, Dkt. 14 ("Indeed, the Dubai Court of Appeal Judgment found that [Intervenor] used bank accounts to collect receivables from SSC to transfer payments and amounts owed to SSC" to an affiliated entity, which the Dubai Court deemed "acts of fraud and deception."). Petitioner hopes to use the discovery he obtains pursuant to this § 1782 proceeding as "direct evidence of the Liable Parties' criminal dissipation of assets," which will also "assist the Criminal Judge to adjudicate on [sic] the matter." Al Dhaheri *ex parte* Decl. ¶ 13.[6]

Petitioner seeks banking records from various financial institutions located within this district "to advance" the Petitioner's claim in the Pending and Contemplated Criminal Proceedings and "to obtain evidence of intermediary bank transfers, and documents relating thereto" for use in the Contemplated Criminal Proceeding as proof "of dissipation of assets by the Liable Parties to avoid the enforcement of a judgment." *Id.* ¶ 19. Specifically, Petitioner

---

[5] Article 269 "provides that an individual who improperly dissipates assets to avoid the enforcement of a judgment against him is subject to up to two years' imprisonment and a fine of up to AED 100,000." Al Dhaheri *ex parte* Decl. ¶ 13. Article 364 "makes it a criminal offence for partners, shareholders or managers to falsify a company's finances." *Id.*

[6] Intervenor concedes that he was a shareholder and manager of SSC "when the Deal was done in 2008 by Mustansir and SSC," but "was naturally made culpable in the eyes of the law" despite having "no full and open knowledge of the Deal at that time." Mot. at 10. Intervenor further claims to have "exited from SSC and its related entities in November in 2017." *Id.* at 7–8.

seeks information related to wire transfers between certain specified entities and individuals "that are likely to have improperly received USD transfers from the Liable Parties where such funds should have been used to satisfy the [Petitioner's] judgment." Al Dhaheri Opp. Decl. ¶ 22; *see also* Pet. at 5–6.

On February 27, 2023, this Court granted Petitioner's § 1782 application. Order, Dkt. 7. Petitioner sought authority to pursue discovery of "wire transfers for which the Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to Clearing House Interbank Payment Systems (CHIPS), Fedwire, or where the Respondents otherwise facilitated interbank funds transfers, or where the Discovery Targets[7] were the recipients or facilitators of suspicious transactions in USD, as well as documents relating thereto, for the limited period beginning 2016 to the present." Al Dhaheri *ex parte* Decl. ¶ 23; Pet. at 6.

On April 5, 2023, Intervenor moved to intervene, to vacate the Court's February 27, 2023 Order, to quash the subpoenas, and to stay discovery. *See* Mot., Dkt. 10; Mem., Dkt. 11. Intervenor argues that he has a right to intervene, that Petitioner has not demonstrated that the requirements for obtaining judicial assistance under § 1782 are met, and that, even if he had, the discovery sought is overly broad. *See* Mem. at 8–10. Alternatively, Intervenor requests that he be provided a copy of all documents produced in response to Petitioner's subpoenas. *Id.* at 22.

Petitioner appears to concede that Intervenor is an interested party in this case and thus should be permitted intervention but argues that his requests to vacate the Court's order, quash

---

[7] The Discovery Targets are "entities and individuals that are likely to have improperly received USD transfers from the Liable Parties," which Petitioner has identified "[b]ased on the records that [he] has managed to obtain to date." Al Dhaheri *ex parte* Decl. ¶ 18. Those entities and individuals include: Zaibunnisa Abid Moosajee; RJO Futures; Currency Exchange Ltd.; Thai Afghan Gems Co. Ltd.; Transferwise Ltd.; XE Europe BV; World First UK Ltd.; Source Fire Inc.; Taheri Inayathusen Vohra; XE Money Transfer; and Key Currency Ltd. *Id.* The sample subpoena attached to Petitioner's application also identifies the names of the Liable Parties — including Intervenor — as a person for whom Petitioner seeks wire transfer records involving the Discovery Targets. *See* Dkt. 1-1.

the subpoenas, to stay discovery, and to give him copies of all documents that are produced lack merit. The Court agrees.

## DISCUSSION

### I. The Motion to Intervene Is Granted

Pursuant to Federal Rule of Civil Procedure 24(a)(2), a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To intervene either as of right or with permission,[8] "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. . . . Failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (cleaned up). "While accepting as true the non-conclusory allegations of the motion, courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (internal citation and quotation marks omitted).

#### A. The Motion to Intervene Is Timely

Whether a motion is timely "defies precise definition," but "is not confined strictly to chronology." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). The determination is flexible and "entrusted to the district judge's sound discretion." *Id.* (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir.

---

[8] Intervenor urges the Court to grant his motion to intervene as of right and contends that, even if the Court finds that he is not entitled to intervene as of right, the Court should allow him permissively to intervene. Mem. at 13–14. Because the Court finds that he is entitled to intervene as of right, it does not reach the question of whether permissive intervention would be appropriate.

5

1986)). A court considers "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Id.* (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006)).

Here, Intervenor filed his first attempt to halt discovery on March 22, 2023, *see* Dkt. 8, less than 30 days after the Court's February 27, 2023 Order granting Petitioner's application for judicial assistance, and one week prior to the deadline for Respondents to move to vacate or quash the subpoenas, *see* Dkt. 7.[9] The Court directed Intervenor to file a proper motion to intervene with an accompanying memorandum of law by April 10, 2023. Endorsement, Dkt. 9. Because Intervenor filed his motion on April 5, 2023, five days before the deadline, the Court finds that the motion to intervene was timely.

    **B. The Intervenor Has an Interest in this Action that Would Be Impaired by Allowing Petitioner to Proceed with Discovery**

"For an interest to be cognizable under Rule 24, it must be direct, substantial, and legally protectable" such that "an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Floyd*, 770 F.3d at 1060 (cleaned up); *see also Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001).

Intervenor indeed has an "interest relating to the property or transaction that is the subject of the action" because, as the party against whom Petitioner seeks to enforce a judgment and file

---

[9] Intervenor first filed, *pro se*, what was denominated a "Reply (Objection) to the Declaration of Mohammed Al Dhaheri in Support of *Ex Parte* Application for Judicial Assistance" on behalf of himself and SSC. *See* Dkt. 8. On March 27, 2023, this Court ordered that to move to quash the subpoena, Intervenor must "make a proper motion to intervene" in this case. *See* Endorsement, Dkt. 9. The Court also noted that SSC could not represent itself in federal court, and thus any motion to intervene on behalf of the LLC must be made by a licensed attorney. *See id.* The instant motion to vacate was filed by Intervenor *pro se* on behalf of himself individually; SSC did not file a motion to intervene. *See* Mot., Dkt. 10. The Court notes, however, that the quality of Intervenor's motion papers suggests that he obtained at least some assistance from an attorney.

6

a criminal complaint, he has privacy interests in financial documents relating to the movement of funds to or from him that Petitioner hopes to use against him in legal proceedings in the UAE. Fed. R. Civ. P. 24(a)(2); *see, e.g.*, *In re Hornbeam Corp.*, 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015) (citing *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005)) (a nonparty may permissively intervene to protect its confidentiality interests or when a party seeks to use the information produced against the nonparty), *aff'd*, 722 F. App'x 7 (2d Cir. 2018); *In re Reyes*, 2019 WL 6170901, at *2 (S.D.N.Y. Nov. 20, 2019) (citing *App. of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997)) (same). Indeed, Intervenor is a named defendant in the judgment of the Dubai Court of Appeal that Petitioner is trying to collect. *See* Al Dhaheri Opp. Decl. ¶ 20; *id.* Ex. A, Dkt. 12-1.

### C. Respondents Do Not Adequately Protect Intervenors' Interests

"Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (citations omitted). A nonparty's burden of demonstrating that his interests "would not be protected adequately by the parties to the action" is higher "when the movant seeks the same relief as one of the parties to the action," *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 296–97 (S.D.N.Y. 2018) (citing *Wash. Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990)).

Here, Respondents have not filed any motion to quash or vacate, and there is no reason to believe that they will — financial institutions frequently receive discovery requests of this ilk and rarely oppose them. *See, e.g.*, *In re App. of Banco BNP Paribas Brasil S.A.*, 1:22-MC-00252, Dkt. 10 (S.D.N.Y. Sept. 8, 2022); *In re App. of JSC INGTORGSTROY*, 1:22-MC-00103, Dkt. 11 (S.D.N.Y. Apr. 14, 2022); *In re Deposit Guarantee Fund (Ukraine)*, 2021 WL 1857090, at *1 (S.D.N.Y. Apr. 21, 2021). Accordingly, there is no practical reason to believe that

Intervenor's interests will be "protected adequately by the parties to the action." *Floyd*, 770 F.3d at 1057 (internal quotation omitted).

The Court therefore grants Intervenor's motion to intervene as of right.

**II.    The Motion to Vacate the Court's Order Granting Petitioner's § 1782 Application Is Denied**

Pursuant to § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a). A district court is authorized to grant a request under § 1782 only if the applicant has met three statutory requirements: (1) discovery is sought from a person or entity residing or found in the district; (2) discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is an interested person before such foreign tribunal. *See Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015).

Once the district court has determined that a petition for discovery in aid of a foreign proceeding satisfies the § 1782 factors, it must apply the discretionary factors to determine whether to grant the § 1782 petition. *See In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) — both over whether to grant a discovery order and, if so, what limits to place on that discovery."). In exercising its discretion, a district court should consider the petition "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (cleaned up). In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court announced four factors to guide a district court's consideration: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding,

such that the foreign tribunal can itself order the person to produce evidence; (2) whether the foreign tribunal is receptive to U.S. court assistance; (3) whether the request seeks to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome.  *See* 542 U.S. 241, 264–65 (2004).

### A.  The § 1782 Petition Satisfies the Statutory Requirements

Intervenor does not dispute that the first statutory factor is satisfied because the parties from whom the Petitioner seek discovery are found within this district.  Intervenor disputes, however, that the discovery Petitioner seeks is "for use" in a reasonably contemplated foreign proceeding.  Mem. at 16.  A § 1782 application satisfies the "for use" requirement where the materials sought "are to be used at some stage of a foreign proceeding." *Mees*, 793 F.3d at 295. Where a foreign proceeding has not yet been initiated, discovery may still be "for use" in that proceeding "so long as the proceeding is within reasonable contemplation." *Id.*  Petitioner seeks discovery to aid in the enforcement of a judgment he has already obtained and to gather evidence that will "persuade the UAE Public Prosecutor that a prosecution will be successful." *See* Opp. at 9–11.

Intervenor does not meaningfully dispute that the Pending Proceeding constitutes a foreign proceeding pursuant to § 1782;[10] rather, Intervenor argues that the Contemplated Criminal Proceeding falls outside the scope of "reasonable contemplation" because Petitioner has yet to bring that case. *See* Mem. at 17–19.  Petitioner insists, however, that he will file the criminal complaint "as soon as reasonably possible before the Public Prosecution in the Emirate of Sharjah, UAE[,] and awaits discovery obtained" from the Respondents located in this district

---

[10]  To the extent Intervenor addresses the Pending Proceeding at all, he claims that he "filed an appeal to the Federal Supreme Court," and that such appeal would, if successful, "void [Petitioner's] Application."  *See* Mem. at 10–11.  Petitioner, however, asserts that no such appeal has been filed, and that there is no capability in any event to appeal that order because the Dubai Court of Cassation — the very court that affirmed the judgment against Intervenor — is Dubai's court of last resort. *See* Al Dhaheri Opp. Decl. ¶¶ 7–10.

"to provide further evidence of the Liable Parties' criminal dissipation of assets (under UAE law)." Al Dhaheri Opp. Decl. ¶ 18.

Because Petitioner is currently involved in at least one foreign proceeding concerning the dispute as to which he seeks discovery — i.e., the Pending Proceeding — he has adequately demonstrated that the discovery materials he seeks will be used in a foreign proceeding. The discovery sought also "could be . . . used to increase [Petitioner's] chance of success" in pursuing criminal charges, which he plans to institute pursuant to UAE criminal statutes. *See In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015) (internal quotation omitted).

As a plaintiff in the Pending Proceeding who is actively attempting to enforce a judgment against Intervenor concerning the same dispute as the Contemplated Criminal Proceeding, Petitioner is clearly an "interested person." *See Intel Corp.*, 542 U.S. at 256 (litigants in foreign proceedings are interested parties for the purposes of § 1782). Petitioner need not demonstrate that he holds a winning claim;[11] it is enough that he has demonstrated an interest in obtaining discovery in the United States because of his participation in foreign proceedings. *See id.* at 256–57.

### B.  The *Intel* Factors Do Not Weigh in Favor of Vacatur

Intervenor's only argument for vacatur under the *Intel* factors is that Petitioner's request is impermissibly broad and burdensome. *See* Mem. at 19. The Court finds that the *Intel* factors

---

[11]  While Intervenor argues that "the Sharjah Public Prosecutor will definitely reject" Petitioner's criminal complaint for lack of jurisdiction, *see* Mem. at 8, the Court declines to wade into the details of UAE law. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) ("We think that it is unwise — as well as in tension with the aims of section 1782 — for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law.").

weigh against vacating the Court's February 27, 2023, Order granting Petitioner's § 1782 Application.[12]

In determining whether the scope of a discovery request is appropriate, courts apply Federal Rule of Civil Procedure 26, which requires courts to consider, *inter alia*, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Petitioner seeks wire transfer records from January 1, 2016, to the present. Thus, the request is not only limited in time, but also in scope: Petitioner seeks discovery from 13 financial institutions regarding transactions between 17 entities and individuals. *See* Dkt. 1-1; *see also* Mem. at 22. Intervenor argues that Petitioner's failure to include a "cut-off date" means that his subpoenas are a "fishing expedition." Mem. at 21. But the Court finds that the time period for which Petitioner seeks discovery is proportionate to the needs of the case, which involves a yearslong effort to avoid the enforcement of an outstanding multi-million-dollar judgment that stemmed from a fraud that began in 2008. *See* Opp. at 13. The Court also notes that none of the Respondents has moved to quash or otherwise objected to the subpoenas on the grounds of burdensomeness. *Id.* Accordingly, the Court finds that Petitioner has demonstrated that the proportionality requirement of Rule 26 is satisfied, and that the benefit of the proposed discovery to the Petitioner outweighs the burden imposed on Respondents.

### III.  Intervenor Is Not Entitled to Copies of Documents Produced

Intervenor, without argument, essentially seeks permission to inspect any materials already produced by subpoenaed parties. Mem. at 22. Although the bank records that Intervenor seeks are not inherently private, *see United States v. Miller*, 425 U.S. 435, 440–41 (1976) (holding that bank customers have no reasonable expectation of privacy in the financial records

---

[12]  In the absence of any argument to the contrary, the Court finds that the other *Intel* factors do not support vacatur: the entities from whom discovery is sought are not participants in the foreign proceeding; there is no reason to believe that the foreign tribunal is not receptive to U.S. court assistance; nor does the request appear to be seeking to circumvent foreign proof-taking restrictions. *See Intel*, 542 U.S. at 264–65.

kept by their banks), Petitioner has persuasively argued that there is a substantial risk that if given access to the documents, Intervenor will tip off the other Liable Parties "so that they can again reconfigure their financial arrangements and move money to avoid paying the judgments," Opp. at 16.  Given that Intervenor has failed to articulate any particular prejudice he would suffer without access to such discovery, the Court finds no basis for granting Intervenor's request, particularly where any records directly involving him should already be within his reach.  Indeed, nothing prevents Intervenor from inspecting his own financial records or requesting records of his own financial transactions from any of the Respondent institutions.  In short, the Court denies Intervenor's request to inspect all documents produced pursuant to Petitioner's subpoenas.

## CONCLUSION

For the foregoing reasons, the motion to intervene is GRANTED.  Intervenor's motion to vacate the Court's Order that granted Petitioner's § 1782 Application and to quash the subpoenas is DENIED.  The Intervenor's motion to stay discovery pending resolution of the case is DENIED as moot as the case has now been resolved.  Intervenor's request to be given a copy of all materials produced to Petitioner is DENIED.  The Clerk of Court is respectfully directed to terminate all open motions and to close the case.

**SO ORDERED.**

Date:  May 2, 2023
       New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**